IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALBERT M. YOUNG,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 18-cv-00195-DKW-RLP<br><br>**ORDER AFFIRMING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY**[1] |

On May 24, 2018, Plaintiff Albert M. Young appealed the Acting Commissioner of Social Security's denial of his application for disability insurance benefits. In his Opening Brief, Young asks this Court to review (1) the Administrative Law Judge's ("ALJ") finding with respect to residual functional capacity ("RFC"), and (2) the ALJ's rejection of his symptom testimony. After carefully reviewing the record below and the parties' submissions, the Court concludes that the ALJ did not err in the manner suggested by Young and affirms the decision of the Acting Commissioner of Social Security, as set forth below.

---

[1] Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.

# BACKGROUND

I.   **Review of Disability Claims**

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA).  20 C.F.R. § 404.1520.  First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities.  *Id*. §§ 404.1520(a)(4)(ii), (c).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work.  *Id*. § 404.1520(e).  The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of his RFC, prevents him from performing work he performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform his previous work, he is not disabled.  *Id*. § 404.1520(f).  If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step.  *Id*. § 404.1520(a)(v),

(g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1).

## II.    The ALJ's Decision

On June 7, 2017, the ALJ issued a decision finding Young "not under a disability" for purposes of the SSA from the alleged onset date of January 1, 1996 through June 30, 1999, which is the date Young was last insured. Administrative Record ("AR") at 23. At Step One of the evaluation process, the ALJ determined that Young had not engaged in substantial gainful activity from January 1, 1996 through June 30, 1999. *Id*. at 18. At Step Two, the ALJ determined that, through June 30, 1999, Young had the following severe impairments: mild-to-moderate chondromalacia of the patellofemoral joints bilaterally; right mild calcific rotator cuff tenderness with positive impingement test; lumbar spine degenerative disc disease; left hand (particularly thumb) degenerative joint disease and nerve damage; and obesity. *Id*. At Step Three, the ALJ determined that, through June

30, 1999, Young did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*.

Before reaching Step Four, the ALJ determined that, through June 30, 1999, Young had the RFC of "less-than-light exertion," *id*. at 21, with the following limitations:

> [H]e was able to lift and/or carry 20 pounds occasionally; he was able to stand and/or walk 4 hours total (no more than 2 hours at a time) during an 8-hour period; he was able to sit 6 hours total (also no more than 2 hours at a time) during an 8-hour period; he was able to push and/or pull frequently with the bilateral upper extremities; he was able to occasionally climb ramps and stairs (he was never able to climb ladders, ropes, or scaffolds); he was able to occasionally balance, stoop, kneel, and crouch (but never crawl); he was able occasionally to reach overhead with the bilateral upper extremities; he was able to perform gross handling and fine fingering frequently with the left upper extremity[;] and[,] he had to avoid concentrated exposure to unprotected heights and hazardous machinery[.]

*Id*. at 18. The ALJ also later stated that Young could lift and/or carry at the light level of exertion, meaning 20 pounds occasionally and 10 pounds frequently. *Id*. at 21.

At Step Four, the ALJ determined that Young was unable to perform any past relevant work. *Id*. at 21-22. At Step Five, the ALJ determined that, through June 30, 1999, there were jobs that existed in significant numbers in the national

economy that Young could perform. *Id*. at 22-23. More specifically, a vocational expert stated that, in light of Young's RFC, age, education, and work experience, he would be able to perform the jobs of cashier II (booth), storage facility rental clerk, and furniture rental consultant. *Id*. at 22. This final determination resulted in the ALJ finding that Young was not under a disability for purposes of the Social Security Act at any time from January 1, 1996 through June 30, 1999. *Id*.

### III. The Appeals Council's Decision

On March 20, 2018, the Appeals Council denied Young's request for review of the ALJ's decision. *Id*. at 1.

### IV. This Action

In his Opening Brief, Dkt. No. 9, Young makes two principal arguments. First, the ALJ determined that Young could lift no amount of weight frequently, and thus, the ALJ's failure to include this limitation in the hypothetical questions posed to the vocational expert and the expert's resulting testimony amounted to error. Second, the ALJ did not provide specific, clear, and convincing reasons for rejecting Young's symptom testimony.

# STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

**I.    RFC**

In his Opening Brief, Young argues that, in the RFC finding, the ALJ determined that he could lift no amount of weight frequently. He further argues that, despite making this determination, the ALJ failed to ask the vocational expert any hypothetical specific to the limitation of being able to lift no amount of weight frequently. Instead, the ALJ's hypotheticals included that he could lift 10 pounds frequently. Young argues that, as a result, the jobs to which the vocational expert testified he could perform were of no evidentiary value.

Young's argument in this regard is based upon a false premise–that the ALJ determined he could lift no amount of weight frequently. The ALJ made no such determination. Young appears to premise his argument on the fact that the bolded heading at the start of the RFC discussion in the ALJ's decision does not mention his capacity to lift weight frequently. In fact, in his Reply Brief, Young asserts that the "contents of the heading at section 5 is the ALJ's RFC finding." Reply Brief at 5, Dkt. No. 11. Young, however, never explains or offers any authority indicating why the RFC finding must be confined to the ALJ's bolded heading alone.

Of course, if the bolded heading contained limitations for a claimant *and* the subsequent discussion contained no further findings with respect thereto, then it could be said that the bolded heading contained *all* of the limitations for the RFC finding. That does not mean, though, that an ALJ can *never* make any additional findings with respect to a claimant's limitations beyond those set forth in a heading. To say otherwise would simply put the formalism of placing all of a claimant's limitations in a bolded sentence over the substance of the ALJ's actual findings with respect to the RFC.

In that light, the ALJ committed no error with the hypothetical questions it posed to the vocational expert and in accepting the expert's subsequent testimony. That is because, before concluding the RFC discussion, the ALJ found that "[Young] can lift and/or carry at the light level of exertion…." AR at 21. The ALJ further specified what this meant – that Young could lift and/or carry 20 pounds occasionally *and 10 pounds frequently*. *Id*.; *see also* 20 C.F.R.§ 404.1567(b).[2] Other than failing to place the words "and 10 pounds

---

[2]In his Reply Brief, Young makes the following argument: "Where the ALJ's analysis is that his finding is closer to the full range of light work, this identifiably considers [Young's] ability to lift and/or carry 20 pounds at a time, but not his ability to lift ten pounds as described at both exertional levels." Reply Brief at 6. Whatever argument it is that Young is trying to make here, apart from being non-sensical, it is wrong. The ALJ's statement that the RFC was closer to a light range of work takes into account various limitations contained in the RFC that may not

8

frequently" in the bolded text at the start of the RFC determination, Young provides no reason why the finding that Young could lift and/or carry 10 pounds frequently was erroneous. The Court, thus, will not disturb it. As such, the ALJ's hypothetical questions to the vocational expert – both of which included the limitation of being able to lift and/or carry 10 pounds frequently, AR at 57, 59 – and the expert's resulting testimony were of evidentiary value.

As a result, the Court finds no reversible error in this regard.

## II. Symptom Testimony

In his Opening Brief, Young argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting his testimony that he would need to take days off from work due to the severity of his back pain. Young argues that the ALJ both did not identify his testimony about needing to take days off from work and failed to provide any explanation for rejecting this testimony.

In response, Dkt. No. 23, the Acting Commissioner argues that the ALJ did consider Young's allegations of back pain and gave specific reasons for rejecting the same. The Acting Commissioner argues that the ALJ found Young's minimal treatment records did not support his symptom testimony, with the ALJ noting that

---

have constituted a *full* range of light work. As the ALJ clearly stated, however, one aspect of light work that Young could do was lift and/or carry at a light level. AR at 21.

the first record of back-related complaints was from January 1999, and a lack of objective support for Young's symptoms.[3]

In the Ninth Circuit, when considering a claimant's symptom testimony, an ALJ must, first, determine whether (1) objective medical evidence has been provided of an underlying impairment that may reasonably produce the symptom(s) alleged, and (2) the claimant is malingering. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-493 (9th Cir. 2015). Here, the ALJ found that, prior to the date last insured, Young's medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR at 19. In addition, the ALJ made no finding that Young was malingering.

As a result, in order for the ALJ to reject Young's testimony about the severity of his symptoms, the ALJ was required to provide "specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 493.[4] "General findings are insufficient; rather, the ALJ must identify what testimony is not

---

[3]The Acting Commissioner makes a number of other arguments with respect to this issue, including inaccuracies in a letter Young wrote and inconsistencies with respect to other testimony Young gave. The ALJ, however, did not rely on these reasons for rejecting Young's testimony. Therefore, neither will this Court. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (explaining that a reviewing court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ").

[4]In a footnote, the Acting Commissioner appears to dispute this standard of review. But the Acting Commissioner also appears to acknowledge that this standard of review comes from binding Ninth Circuit precedent, which this Court is thus obligated to follow. *See* Response Brief at 8 n.2, Dkt. No. 10.

credible and what evidence undermines the claimant's complaints." *Id*. The reason for specificity is so a reviewing court can "conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id*.

Here, Young argues that the ALJ provided insufficient (or no) findings with respect to his testimony that he would need to take time off from work due to back pain. In his testimony, on a number of occasions, Young stated that he would need to take two to three weeks off due to his back pain.[5] It is the sole testimony he provided with respect to the severity of pain he suffered due to his back.

In his decision, the ALJ stated that Young testified about back pain, without further summarizing or otherwise mentioning the severity of pain Young said he

---

[5]More specifically, Young testified as follows:
> But I was a – but every time I got – one time I got terminated, not because of job performance but not being able because I'll be out of work two or three weeks due to my back.
> …
> And I was – the reason why I kind of stayed longer in that job is it was – it was a family business and they took [INAUDIBLE] but they knew I was responsible, I did my job but the only problem, I wouldn't show up for work when I had the episodes with my back for two or three weeks.
> …
> When my back is inflamed I would get up in the morning – I would try to get up in the morning and as soon as I – I can feel it I have the – I'll be – I'll lay down for two or three weeks.
> …

AR at 45-46, 47, 53.

suffered from. *See* AR at 19. Young argues that this was error because the ALJ did not specifically mention that he would need to take days off from work due to his back pain. Reply Brief at 9. In the context of this case, the Court does not discern why. The sole testimony Young offered about the severity of his back pain was that he would need to take two to three weeks off (not "days" as Young suggests in his briefs) due to the pain. In other words, taking weeks off *was the back pain testimony* that Young offered. There was, thus, no need for the ALJ to further elucidate Young's testimony beyond "back…pain." To require the ALJ to do more would, like the RFC issue, simply put the formalism of summarizing with more words Young's testimony about back pain over the substance of whether the ALJ considered and provided permissible grounds for rejecting it.

Here, the ALJ both considered and provided permissible grounds for rejecting Young's testimony about back pain. As discussed, the ALJ stated that Young complained about back pain. The ALJ then found that Young's testimony about the severity of his symptoms was not consistent with the record, pointing to two specific reasons for making this determination.

First, the ALJ found that Young's "minimal treatment record" did not support his complaints. AR at 20. This is undoubtedly true, and Young does not contend otherwise in his briefs. Instead, Young simply asserts that the ALJ's

12

reliance on this factor "fails." *See* Reply Brief at 9. Why this factor "fails" is not entirely clear, but it appears to be based upon Young's belief that the paucity of medical records was a "general[]" statement. *See id*. But, it was not; it applies specifically to Young's complaints about back pain–there is a "minimal treatment record" concerning Young's back. Prior to the date last insured, the ALJ could identify exactly one record–a complaint about back pain in January 1999 (AR at 19-20)–and Young points to no other. The same conclusion about there being a minimal treatment record is true of Young's other complaints concerning his left hand and knee. *See* AR at 19-20. There was, thus, no need for the ALJ to say that there was a minimal treatment record with respect to each specific complaint when the conclusion applied equally to all of the complaints. As a result, the ALJ did not err in relying on this factor. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (explaining that an ALJ, in evaluating a claimant's testimony, may consider unexplained or inadequately explained failures to seek treatment).[6]

Second, the ALJ found that the objective medical evidence did not support Young's complaints. This finding was, again, undoubtedly true, as there is simply no objective medical evidence in the record that Young needed to take two to three

---

[6]Young does not dispute, nor has he attempted to explain, the paucity of medical records prior to his last insured date.

weeks (or any time) off from work due to his back pain prior to the date last insured. Young, again, does not contend otherwise. Instead, Young, again, simply asserts that the ALJ's reliance on this factor was not sufficiently specific because it merely amounted to a summary of the medical evidence. *See* Reply Brief at 10. While the ALJ certainly did, as he must, summarize the medical evidence, the ALJ also reached a specific conclusion after that summary–that there was no objective medical evidence to support Young's complaints. That conclusion applies specifically to Young's complaints about his back pain. The fact that it also applies specifically to Young's other complaints does not make it general or otherwise insufficiently specific. As a result, the ALJ did not err in relying on this factor. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Ultimately, in light of Young's testimony, the medical and/or treatment record for the period prior to the date last insured, and the ALJ's findings in the decision, this Court concludes that the ALJ considered and rejected Young's testimony about his back pain on permissible grounds and did not arbitrarily discredit it. *See Brown-Hunter*, 806 F.3d at 493. As a result, the Court finds no reversible error in this regard.

## CONCLUSION

For the reasons set forth herein, the Acting Commissioner's decision denying Young's application for disability insurance benefits is AFFIRMED. The Clerk of Court is directed to enter judgment in favor of the Acting Commissioner and then close this case.

IT IS SO ORDERED.

DATED: February 27, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge